FILED
JAN 15 2021
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF OHIO
CLEVELAND

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | INFORMATION |
| | ) | JUDGE ADAMS |
| Plaintiff, | ) | |
| | ) | CASE NO. 1:21 CR 6 |
| v. | ) | Title 18, United States Code, |
| | ) | Section 371 |
| ROBERT FITZPATRICK, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

## General Allegations

At all times relevant to this Information, unless otherwise specified:

1. Defendant ROBERT FITZPATRICK worked for the City of Cleveland (hereinafter, "the City") in the Division of Recreation. Defendant began his work for the City in or around 1985 and has remained employed by the City to present. Defendant worked in various positions within the Division of Recreation until being promoted to his current position as a regional manager in or around 2010. In this position, Defendant oversaw operations at seven recreation centers within the City. This included directly supervising the center manager at each recreation center.

2. Official 1 served as a Councilperson for the City. Defendant and Official 1 had a personal relationship for almost 40 years.

3. City Employee 1 ("CE1") worked for the City as Official 1's Executive Assistant, a position CE1 held for over 20 years. In that capacity, CE1 was responsible for assisting Official 1 with administrative tasks required for Official 1's various projects in Official 1's ward.

4. The City was a political subdivision within the state of Ohio. The City was a government organization as defined by Title 18, Section 666(d)(2), United States Code, and during each one-year period from July 2013 to June 2019, received benefits in excess of $10,000 under a Federal program involving a grant, contract, subsidy, loan, guarantee, insurance, and other forms of Federal assistance. These included funds under Title I of the Housing and Community Development Act of 1974, issued by HUD ("Community Development Funds").

5. The Community Development Funds were distributed in grant years that began on July 1 of one calendar year and ended on June 30 of the following calendar year. In each of the following grant years, the City received Community Development Funds in the following amounts:

| Grant Year | Approximate Grant Amount |
|---|---|
| July 1, 2013 to June 30, 2014 | $20,265,802 |
| July 1, 2014 to June 30, 2015 | $19,986,578 |
| July 1, 2015 to June 30, 2016 | $19,564,836 |
| July 1, 2016 to June 30, 2017 | $19,382,724 |
| July 1, 2017 to June 30, 2018 | $19,324,970 |
| July 1, 2018 to June 30, 2019 | $21,175,297 |

6. The Community Development Funds were deposited and held in the City's General Fund. The General Fund was the chief operating fund of the City into which most of the City's revenue was deposited and from which most of the City's expenditures were paid.

### Reimbursements from the City of Cleveland

7. The legislative branch of the City was Cleveland City Council (hereinafter, "City Council" or "Council"). There were seventeen elected members of Council, each representing approximately 25,000 citizens in one of seventeen discrete geographic areas called "wards."

8. In the City, each member of the City Council had a "council member expense account." Each month, Council members could be reimbursed for up to $1,200 in eligible

council-related expenses. Expenses eligible for reimbursement included items such as in-home or rental office expenses, printing or postage costs, telephone expenses, or automobile expenses.

9. City Council members had to complete the City's Form M-1 ("Council Member Expense Report") to receive reimbursement each month, documenting how much money the Council member spent on eligible expenses in a given month. Council members were also required to provide supporting documentation to verify the legitimacy of the expenses they submitted for reimbursement.

10. After the form and supporting documentation were submitted, an administrative employee for City Council reviewed the claim and approved or denied the reimbursement. If approved, the City issued a check from the General Fund to the Council member for the amount approved for reimbursement.

11. From in or around July 2013 through in or around October 2018, Official 1 requested the maximum reimbursement – $1,200 – every month. Official 1 made these reimbursement requests for ward services that Defendant purportedly performed in Official 1's ward.

12. Over ten years ago, Official 1 and CE1 approached Defendant and asked him to perform ward services in Official 1's ward. These tasks included: cutting grass, checking on abandoned properties, assisting with snow removal, and looking for potential homes that could be renovated and sold for a profit.

13. Defendant performed ward services for approximately six weeks in or around 2010.

14. Neither Official 1 nor CE1 ever paid Defendant for the ward services he performed. Defendant continued to receive his salary from the City.

15. Defendant did not perform any ward services after the initial six weeks in or around 2010.

16. CE1 regularly delivered timesheets to Defendant and instructed Defendant to sign the timesheets. Defendant complied, even though he did not actually perform any ward services beyond the initial six weeks. Each timesheet was a document that purported to reflect the hours that Defendant performed ward services in Official 1's ward.

17. CE1 collected the completed timesheets from Defendant's and delivered them to Official 1.

18. From in or around January 2013 to in or around March 2019, Official 1 submitted false Council Member Expense Reports to the City. Official 1 attached Defendant's false timesheets to each of the false Council Member Expense Reports. Official 1 also attached receipts purporting to reflect that Official 1 had paid Defendant in cash for performing ward services. Each receipt purported to bear Defendant's signature. The false Council Member Expense Reports, false timesheets, and receipts are together referred to herein as the "Council Reimbursement Packet."

19. Based on the Council Reimbursement Packets that Official 1 submitted, from on or about January 28, 2010, to on or about October 16, 2018, the City issued $1,200 monthly expense reimbursement checks to Official 1. Each expense reimbursement check was drawn upon the City of Cleveland's General Fund and was deposited into Official 1's personal bank account.

## COUNT 1
(Conspiracy to Commit Federal Program Theft, 18 U.S.C. § 371)

The United States Attorney charges:

20. The factual allegations contained in paragraphs 1 through 19 are realleged and incorporated by reference as if fully set forth herein.

21. From on or about July 1, 2013, through on or about June 30, 2019, in the Northern District of Ohio, Eastern Division, and elsewhere, Defendant ROBERT FITZPATRICK, Official 1, CE1, and others known and unknown to the Grand Jury, did combine, conspire, confederate and agree together and with each other to violate the laws of the United States, to wit: to commit Federal Program Theft, in violation of Title 18, United States Code, Section 666(a)(1)(A).

### Objects of the Conspiracy

22. The objects of the conspiracy were to: (1) induce the City to issue expense reimbursement checks to Official 1, (2) enrich Official 1 and others, and (3) prevent detection of the conspiracy.

### Manner and Means

23. To obtain the objects of the conspiracy, Defendant and others employed the following manner and means:

   a. Defendant and his co-conspirators created and caused to be created false and fraudulent documents, including timesheets, receipts of cash payments, and Council Member Expense Reports.

   b. Defendant and his co-conspirators submitted and caused to be submitted to the City the false and fraudulent documents, including timesheets, receipts of cash payments, and Council Member Expense Reports.

5

c.  Defendant and his co-conspirators caused the City to issue expense reimbursement checks to Official 1 to which Official 1 was not entitled.

### Overt Acts

24. In furtherance of the conspiracy and to achieve its objectives, one or more members of the conspiracy committed the following overt acts, among others, in the Northern District of Ohio, Eastern Division, and elsewhere:

a.  On or about the dates listed below, CE1 delivered timesheets to Defendant for him to complete and sign, each such delivery constituting a separate overt act:

|    | Approx. Date of Delivery |
|----|--------------------------|
| 1  | September 8, 2013        |
| 2  | September 14, 2013       |
| 3  | September 22, 2013       |
| 4  | September 29, 2013       |
| 5  | September 30, 2013       |
| 6  | September 7, 2014        |
| 7  | September 21, 2014       |
| 8  | September 27, 2014       |
| 9  | September 30, 2014       |
| 10 | September 5, 2015        |
| 11 | September 12, 2015       |
| 12 | September 19, 2015       |
| 13 | September 26, 2015       |
| 14 | September 30, 2015       |
| 15 | September 3, 2016        |
| 16 | September 10, 2016       |
| 17 | September 17, 2016       |
| 18 | September 24, 2016       |
| 19 | September 30, 2016       |
| 20 | September 1, 2017        |
| 21 | September 8, 2017        |
| 22 | September 15, 2017       |
| 23 | September 22, 2017       |
| 24 | September 29, 2017       |
| 25 | September 7, 2018        |
| 26 | September 14, 2018       |
| 27 | September 21, 2018       |
| 28 | September 28, 2018       |

b. On or about the dates listed below, Defendant signed timesheets, attesting that he had performed ward services, when, as he then well knew, he had not actually completed any ward services, each such signature constituting a separate overt act:

|    | Approx. Date of Signature |
|----|---------------------------|
| 1  | September 8, 2013         |
| 2  | September 14, 2013        |
| 3  | September 22, 2013        |
| 4  | September 29, 2013        |
| 5  | September 30, 2013        |
| 6  | September 7, 2014         |
| 7  | September 21, 2014        |
| 8  | September 27, 2014        |
| 9  | September 30, 2014        |
| 10 | September 5, 2015         |
| 11 | September 12, 2015        |
| 12 | September 19, 2015        |
| 13 | September 26, 2015        |
| 14 | September 30, 2015        |
| 15 | September 3, 2016         |
| 16 | September 10, 2016        |
| 17 | September 17, 2016        |
| 18 | September 24, 2016        |
| 19 | September 30, 2016        |
| 20 | September 1, 2017         |
| 21 | September 8, 2017         |
| 22 | September 15, 2017        |
| 23 | September 22, 2017        |
| 24 | September 29, 2017        |
| 25 | September 7, 2018         |
| 26 | September 14, 2018        |
| 27 | September 21, 2018        |
| 28 | September 28, 2018        |

c. On or about the dates listed below, Official 1 signed Council Member Expense Reports, each such signature constituting a separate overt act:

|   | Approx. Date of Signature |
|---|---------------------------|
| 1 | October 7, 2013           |
| 2 | October 1, 2014           |
| 3 | October 1, 2015           |
| 4 | October 1, 2016           |

7

|   | Approx. Date of Signature |
|---|---|
| 5 | October 1, 2017 |
| 6 | October 6, 2018 |

    d.    On or about the dates listed below, Official 1 submitted and caused to be submitted Council Reimbursement Packets to the City, seeking reimbursement for the money that Official 1 had purportedly paid to Defendant for his purported ward services, each such submission constituting a separate overt act:

|   | Approx. Date of Submission |
|---|---|
| 1 | October 7, 2013 |
| 2 | October 6, 2014 |
| 3 | October 12, 2015 |
| 4 | October 5, 2016 |
| 5 | October 4, 2017 |
| 6 | October 9, 2018 |

    e.    On or about the dates listed below, Defendant, Official 1, and CE1 caused the City to issue expense reimbursement checks to Official 1, each in the amount of $1,200, for each submitted Council Reimbursement Packet, each check constituting a separate overt act:

|   | Approx. Date of Issuance | Check Number |
|---|---|---|
| 1 | October 16, 2013 | 1078294 |
| 2 | October 16, 2014 | 1106065 |
| 3 | October 20, 2015 | 1133960 |
| 4 | October 13, 2016 | 1161301 |
| 5 | October 10, 2017 | 1189517 |
| 6 | October 16, 2018 | 1219851 |

f. On or about the dates listed below, Official 1 deposited and caused to be deposited into Official 1's personal bank account the following City expense reimbursement checks, each in the amount of $1,200, each deposit constituting a separate overt act:

|   | Approx. Date of Deposit | Check Number |
|---|---|---|
| 1 | October 20, 2013 | 1078294 |
| 2 | October 24, 2014 | 1106065 |
| 3 | October 22, 2015 | 1133960 |
| 4 | October 13, 2016 | 1161301 |
| 5 | October 11, 2017 | 1189517 |
| 6 | October 18, 2018 | 1219851 |

All in violation of Title 18, United States Code, Section 371.

BRIDGET M. BRENNAN
Acting United States Attorney

By: *(signature)*
CHELSEA S. RICE
Chief, White Collar Crimes Unit